UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

DANIEL ROBERTS, AS NEXT FRIEND §
AND THE EXECUTOR OF THE ESTATE OF §
MARGARET ROBERTS, §
　§
　Plaintiff, §
VS. § CIVIL ACTION NO. 4:18-CV-01818
　§
CITY OF HOUSTON, §
　§
　Defendant. §

## MEMORANDUM OPINION AND ORDER

**I.　INTRODUCTION**

Before the Court is the defendant's, the City of Houston, Texas, (the City), motion for summary judgment (Dkt. No. 39), and the plaintiff's, Daniel Roberts, As Next Friend and The Executor of the estate of Margaret Roberts (Roberts), response (Dkt. No. 53), and the City's reply in support of its motion (Dkt. No. 55). After carefully reviewing the record and considering the motion, response and reply, the Court concludes that the motion should be **GRANTED**.

**II.　FACTUAL BACKGROUND**

Margaret Roberts, an African-American, female, was employed by the City of Houston Fire Department as a firefighter, from 1994 until 2016. In 2007, Captain Tamez, the supervisor of the three Bush Airport fire stations conducted an inspection of the station where Roberts worked.[1] During the inspection, Captain Tamez asked Roberts to demonstrate the operation of a K-12 Saw and she complied. Later that year, Roberts requested a Wellness Day on August 9,

---

[1] The Factual Background section is based on the Statement of Undisputed Facts contained in the City's Motion.

2007.[2] A maximum of 8-hours for Wellness Days is allowed for each employee per year that may be used in increments. Roberts received her 8-hours as requested. Subsequently, she took 16-hours of sick leave. On August 11, 2007, her next scheduled workday, she requested a "rider." A rider is an arrangement where one firefighter assumers the duty shift of another so that the requesting firefighter does not use annual leave or holiday time for the switch. The decedent was denied the rider privilege and she took leave under FMLA instead. On August 17, 2007, she met with station captains and complained that she felt that Sr. Captain Tamez was singling her out due to her gender. She was advised that she could file a complaint with the City's Office of Inspector General (OIG). She did not.

On October 24, 2007, Roberts was advised that she would be transferred from Station 99 to another station for workforce balancing. She filed a grievance regarding the transfer. Though the grievance form included boxes in which she could indicate the basis of her complaint, she did not mark either race or sex as the basis. On November 1, 2007, her grievance was heard and, having been transferred, she was transferred back to Station 99.

Around the same time, Roberts filed a complaint for discrimination against the City with the Equal Employment Opportunity Commission ('EEOC") and the Texas Workforce Commission Civil Rights Division ("TWC-CRD"). She reported that she was being subjected to "continuing harassment" and discrimination based on her race and sex dating back to March 2007. She specifically complained of being: (1) singled out to start the K-12 Saw; (2) counseled for having requested riders; (3) denied a Wellness Day for 12 hours; and (4) assigned as a permanent fill-in employee at station #54. She further complained that her transfer was in retaliation to her August 7, complaint regarding Captain Tamez.

---

[2] A "Wellness Day" is compensated time off from work to allow and encourage employees to visit a doctor/health care provider for preventive care.

Concurrently, the decedent filed an internal complaint with the OIG complaining that Captain Tamez had discriminated against her based on gender. An investigation ensued, but did not reveal sufficient evidence to prove or disprove her allegation against him. Nevertheless, on September 16, 2008, the decedent amended her EEOC charge complaining that she was subjected to disparate treatment regarding compensation, including overtime and assignments because of her race and gender. Again on April 21, 2011, the decedent amended her charge complaining that: (a) she was dropped from an apparatus at one station and was immediately ordered back to her station; (b) a captain looked at her and said that a cultural change was needed at the airport; (c) items in the women's dorm were rearranged and missing; and (d) she was screamed at when she reported the TV in the women's dorm was not working.

On January 4, 2017, Roberts passed away. On March 6, 2018, the EEOC issued a Right to Sue letter to the Estate of Margaret H. Roberts. Asserting a race and sex discrimination claim based on a hostile work environment theory and a retaliation claim her widow husband filed suit in behalf of her Estate.

## III. APPLICABLE LAW

**Summary Judgment Standard**

Rule 56 of the Federal Rules of Civil Procedure authorizes summary judgment against a party who fails to make a sufficient showing of the existence of an element essential to the party's case and on which that party bears the burden at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). The movant bears the initial burden of "informing the district court of the basis for its motion" and identifying those portions of the record "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323; *see also Martinez v. Schlumber, Ltd.*,

338 F.3d 407, 411 (5th Cir. 2003). Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

If the movant meets its burden, the burden then shifts to the nonmovant to "go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Stults v. Conoco, Inc.*, 76 F.3d 651, 656 (5th Cir. 1996) (citing *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995); *Little*, 37 F.3d at 1075). "To meet this burden, the nonmovant must 'identify specific evidence in the record and articulate the 'precise manner' in which that evidence support[s] [its] claim[s].'" *Stults*, 76 F.3d at 656 (citing *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir.), *cert. denied*, 513 U.S. 871, 115 S. Ct. 195, 130 L. Ed. 2d 127 (1994)). It may not satisfy its burden "with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." *Little*, 37 F.3d at 1075 (internal quotation marks and citations omitted). Instead, it "must set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." *Am. Eagle Airlines, Inc. v. Air Line Pilots Ass'n, Intern.*, 343 F.3d 401, 405 (5th Cir. 2003) (citing *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998)).

"A fact is material only if its resolution would affect the outcome of the action, . . . and an issue is genuine only 'if the evidence is sufficient for a reasonable jury to return a verdict for the [nonmovant].'" *Wiley v. State Farm Fire and Cas. Co.*, 585 F.3d 206, 210 (5th Cir. 2009) (internal citations omitted). When determining whether a genuine issue of material fact has been established, a reviewing court is required to construe "all facts and inferences . . . in the light most favorable to the [nonmovant]." *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540

(5th Cir. 2005) (citing *Armstrong v. Am. Home Shield Corp.*, 333 F.3d 566, 568 (5th Cir. 2003)). Likewise, all "factual controversies [are to be resolved] in favor of the [nonmovant], but only where there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Boudreaux*, 402 F.3d at 540 (citing *Little*, 37 F.3d at 1075 (emphasis omitted)). Nonetheless, a reviewing court is not permitted to "weigh the evidence or evaluate the credibility of witnesses." *Boudreaux*, 402 F.3d at 540 (quoting *Morris*, 144 F.3d at 380). Thus, "[t]he appropriate inquiry [on summary judgment] is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Septimus v. Univ. of Hous.*, 399 F.3d 601, 609 (5th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 – 52 (1986)).

## IV. ANALYSIS & DISCUSSION

In the Estate complaint, Mr. Roberts claims that his wife was discriminated against when she: (1) was denied a rider request; (2) was threatened with reassignment to another station; (3) had limitations placed on her use of "wellness days"; and (4) was subjected to a hostile work environment. Further, Mr. Roberts claims that because his wife opposed unlawful race and gender discrimination, the City retaliated against her and subjected her to different terms and conditions of employment.[3]

### A. The Plaintiff's Race/Sex Discrimination Claim

Arguing that Roberts cannot establish the *prima facie* case for discrimination the City moves for summary judgment. The Court agrees with the City. Roberts contends that the City violated Title VII when it discriminated against her based on her race and sex. Her Title VII claim is subject to the burden-shifting framework outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). The initial burden rests with the

---

[3] The complaint lists three causes of action. Each cause includes a list of conclusory statements.

employee to produce evidence that she: (1) is a member of a protected class, (2) was qualified for the position that she held, (3) was subject to an adverse employment action, and (4) she was treated less favorably than others similarly situated outside of her protected class. *Bryan v. McKinsey & Co.*, 375 F.3d 358, 360 (5th Cir. 2004). Once the employee makes this showing, the burden shifts to the employer to articulate a legitimate non-retaliatory reason for the adverse employment action.

In this case, it is undisputed that the plaintiff has satisfied the first two elements of her discrimination claim. She is a member of a protected class – African-American and female, and that she was qualified for the position she held. However, the evidence fails to establish the third element. There is no evidence that an adverse action was taken against her. To support a Title VII discrimination claim, an "adverse employment action" must be an ultimate employment decision such as hiring, granting leave, discharging, promoting and compensating. *Welsh v. Fort Bend Indep. School District*, 941 F.3d 818 (2019). Mr. Roberts contends that his wife was denied overtime opportunities; hence, she suffered an adverse action.[4] The City maintains that there is no evidence that she was denied overtime. A statement, alone without documentary or testimonial evidence is simply a conclusory statement and will not support an adverse employment action. The Court has reviewed the exhibits proffered by Mr. Roberts and finds that the exhibits lack specificity regarding the denial of overtime and that he has failed to provide other evidence that overtime was denied. Therefore, the Estate's discrimination claim fails.

---

[4] There has no precedential authority in this Circuit addressing whether a denial of overtime constitutes an adverse employment action. The Court determines that, at most, it is a term or condition of employment the exercise of which belongs to the employer. *See Brooks v. Firestone L.L.C.* 640 Fed. Appx. 393 (2016).

B. **Hostile Work Environment Claim**

To establish a hostile work environment claim, the plaintiff must prove that: (1) she belongs to a protected group; (2) she was subjected to unwelcome harassment; (3) the harassment complained of was based on race; (4) the harassment complained of affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action. *Brooks*, 640 Fed. Appx. 393 (2016).

The City contends that there is no evidence that any of the harassment complained about was motivated by her race or sex. The Court agrees. The Court has reviewed the record, and notes that the decedent's complaints regarding how she was treated during her tenure, fail to establish that any alleged treatment was directed toward her based on her race or sex. Therefore, the claim fails.

C. **Retaliation Claim**

Lastly, the City argues that the Estate's retaliation claim cannot survive summary judgment. The elements of a prima facie case requires a showing that: (1) she engaged in a protected activity; (2) suffered an adverse employment action; and (3) a causal link existed between the protected activity and the adverse action. When a plaintiff successfully establishes a prima facie case, the burden then shifts to the defendant to state a legitimate non-retaliatory reason for its action. At this point, any presumption of retaliation drops from the case, and the evidence must show that the defendant's stated reason is actually a pretext for retaliation." *Septimus v. Univ. of Houston,* 399 F.3d 601, 610–11 (5th Cir.2005).

The Estate's claim that the City denied the decedent's overtime because she filed grievances against the fire department fails. There is no evidence that the alleged harassment

complained of interfered with her work performance. More importantly though, there is no evidence that the decedent suffered an adverse employment action. Therefore, the claim fails.

V.   **CONCLUSION**

Robert's claims fail and the City's motion for summary judgment is GRANTED.

It is so ORDERED.

SIGNED on this 3rd day of April, 2020.

　　　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　　　Kenneth M. Hoyt
　　　　　　　　　　　　　　　　　　　　　United States District Judge